UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BRYANT D. HARRIS,

               Plaintiff,                     Case No. 1:15-cv-1041

v.                                      Honorable Robert J. Jonker

JAMES F. BRADLEY et al.,

               Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss for failure to state a claim Plaintiff's § 1983 claims against Defendants Unknown Parties ## 2, 3, 4 and 8, Scheidler, Beckwith, Corizon Healthcare, Earl, Branch County, Ovellette, Dominguez-Bem, Kimble, White, Van Langevelde and Mack.  The Court also will dismiss without prejudice Plaintiff's state-law claims against the dismissed Defendants. The Court will order service of the complaint on

Defendants Bradley, Kline, Fisher, and Morrison.  The Court also concludes that Plaintiff states a claim against Unknown Parties ##1, 5, 6 and 7, though the Court lacks sufficient information at this time to order service of these Unknown Parties.

## Discussion

I.   Factual allegations

Plaintiff Bryant Deandre Harris a state prisoner incarcerated with the Michigan Department of Corrections (MDOC) at Chippewa Correctional Facility, though the actions about which he complains occurred while he was incarcerated at Lakeland Correctional Facility (LCF). He sues 23 Defendants, including Corizon Healthcare and the following MDOC employees at LCF: a Resident Unit Manager (RUM) ("Unknown Party #1"); Assistant RUM James F. Bradley; Correctional Officers (Unknown) Kline and (Unknown) Fisher; Inspector B. Morrison; the Classification/Transfer Coordinator ("Unknown Party #2"); Supervisor (Unknown) Scheidler; Deputy Warden (Unknown) Beckwith; Nurse Deana K. Earl; two unidentified correctional officers working the first shift in F Unit on June 16, 2014 ("Unknown Party #3," "Unknown Party #4"); two unidentified correctional officers working the second shift in F Unit on June 16, 2014 ("Unknown Party #5," "Unknown Party #6"); a party identified as a white female store commissary worker ("Unknown Party #7"); Physician Assistant (PA) Margaret Ovellete; Dr. Victor L. Dominguez-Bem; and an unknown psychologist ("Unknown Party #8").  Plaintiff also sues Branch County and the following Branch County employees:  Prosecuting Attorney Ralph W. Kimble, II; Chief Assistant Prosecutor Valerie R. White; Assistant Prosecutor Aaron Van Langevelde; and Victim Rights Coordinator Denile Mack.

Plaintiff alleges that on June 16, 2014, when he was housed in F Unit at LCF during the first shift of the day, a violent prisoner, Omar DeAngelo Cowan, threatened to assault and physically harm Plaintiff.  Plaintiff notified Officers Kline and Fisher because the RUM and Assistant RUM were not in the unit at the time.

During the second shift, Plaintiff notified two unidentified correctional officers, Unknown Party #5 and Unknown Party #6, of the threats and asked to be placed in protective custody.  He also sent a prison kite to the RUM (Unknown Party #1) and Assistant RUM Bradley.

The next day, Plaintiff met with Bradley and requested protection.  Bradley stated that he could not put Plaintiff in protective custody or transfer him because he was not a problem. Bradley also indicated that placement and transfer decisions are left to the classification director. Over the next week, Plaintiff repeatedly informed, or attempted to inform, Bradley, Fisher, and the second shift officers that he feared for his life.

On June 25, Plaintiff was called out of his cell by Fisher, Kline, and the commissary worker to pick up items that he had ordered from the prison store.  He picked up his items and returned to his cell.  Prisoner Cowan came to Plaintiff's cell and attacked him, stabbing him repeatedly in his neck, ear, chest, back, and arm.  Plaintiff tried to defend himself and screamed for help, hoping or expecting that Kline, Fisher, Bradley, the commissary worker, or the second-shift officers (Unknown Party #5, Unknown Party #6) would hear him and come to his aid.  They did not come.

After the attack ended, Plaintiff left his cell and went to the control center for help. He noticed that Kline, Fisher, and Bradley were not at their duty stations.  Because Plaintiff was bleeding and needed immediate medical assistance, he left the control center and went to the medical

center.  When he arrived, Nurse Earl cleaned and dressed his wounds.  However, none of the medical defendants, including PA Ovellette, Dr. Dominguez-Bem, and the unidentified psychologist (Unknown Party #8), provided any "adequate" services or treatment for his "mental pain and suffering" and "emotional distress."  (Compl., ECF No. 1, PageID.15.)  Plaintiff also contends that Corizon Health did not provide adequate mental health services to address his trauma, which affected his ability to eat and sleep.

That same day, Plaintiff filed a grievance on Defendant Bradley.  Plaintiff contends that Bradley had a duty to contact Inspector Morrison when Plaintiff notified him of the threats against Plaintiff.

On June 26, Inspector Morrison completed a "Request for Protection / Investigation Report."  (*Id.* at PageID.22.)  Plaintiff claims that this report should have been completed on June 16 or 17, when he requested protection.  Defendants Scheidler and Beckwith allegedly acted in concert with Morrison to cover up the failure to protect Plaintiff.

On June 27, Beckwith and Bradley completed a security classification review which resulted in Plaintiff's re-classification and transfer to another facility.

On August 21, 2014, Plaintiff received a letter Branch County Prosecuting Attorney Kimble indicating that Cowan was charged with two counts of assault.  In April the following year, Plaintiff received a letter from Chief Assistant Prosecutor White that the case against Cowan was dismissed and that the Branch County Prosecuting Attorney's office would not be reissung criminal charges.  On July 23, 2015, Plaintiff filed a complaint with the Attorney Grievance Commission about the prosecuting attorneys.

-4-

Based on the foregoing, Plaintiff claims that Defendants violated his rights under state a federal law. Specifically, he contends that Defendants: (1) failed to protect him; (2) provided inadequate medical care; (3) engaged in selective prosecution; and/or (4) denied him access to the courts by destroying evidence.

## II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A. Claim I:  Failure to Protect

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242-43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.").

The Court finds that Plaintiff's allegations suffice to state an Eighth Amendment claim against the Defendants who were either aware of Plaintiff's requests for protection prior to the

assault by prisoner Cowan, or of his cries for help while he was being assaulted:  Defendants Bradley, Kline, Fisher, the unidentified RUM (Unknown Party #1), the unidentified second-shift officers (Unknown Party #5 and Unknown Party #6), and the unknown commissary worker (Unknown Party #7).

Plaintiff also states a claim against Inspector Morrison.  It is not entirely clear whether Inspector Morrison was notified of the threats to Plaintiff and his requests for protection prior to the assault.  On the one hand, Plaintiff alleges that Defendant Bradley had a duty to notify Inspector Morrison of Plaintiff's request, which implies that Bradley never did so.  On the other hand, Plaintiff alleges that Morrison failed to conduct a proper investigation into the threat against Plaintiff, which implies that Morrison was aware of the risk to Plaintiff's safety but failed to act when he should have.  At this stage of the proceedings, the Court generously construes the complaint as alleging that Inspector Morrison learned about Plaintiff's need for protection and failed to act reasonably in response to that need.  Thus, the complaint states an Eighth Amendment claim against Morrison.

In addition, Plaintiff states a claim against the unidentified classification/transfer coordinator (Unknown Party #1).  Plaintiff does not allege that he notified this coordinator of the threats or his need for protection, but he did notify Defendant Bradley, and the following day, Bradley told Plaintiff that he could not be transferred and that the decision was up to the transfer coordinator.  Construing the complaint generously, these allegations imply that Bradley spoke with the transfer coordinator about Plaintiff's request.

In contrast, Plaintiff fails to state an Eighth Amendment claim against the first-shift officers (Unknown Party #2 and Unknown Party #3).  There is no allegation that they were aware of any threats toward Plaintiff, let alone that they were deliberately indifferent to his need for

protection. The fact that they were on duty when Plaintiff was threatened, or when Plaintiff informed other officers of those threats, is not sufficient to state a claim, under the Eighth Amendment or otherwise. Consequently, they will be dismissed.

### B. Claim II: Denial of Adequate Medical Care

Plaintiff contends that the medical defendants, including Defendants Earl, Ovellette, Dr. Dominguez-Bem, the unidentified psychologist (Unknown Party #8), and Corizon Health, failed to provide adequate care for his injuries or his mental pain and suffering and emotional distress.

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in

-8-

medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff's allegations are wholly conclusory. He contends that he did not receive adequate care, but he does not allege any facts indicating that his care was inadequate, or that he had an objectively serious medical need that Defendants were aware of but failed to treat. He contends that Defendants should have referred him for mental health treatment or provided follow-up care to assess his need for treatment. However, he does not allege an objectively serious need for mental health care. Nor does he allege that Defendants were subjectively aware of a serious need but were deliberately indifferent to it. Thus, he does not state an Eighth Amendment claim against these defendants.

Plaintiff cites a number of prison policies concerning medical care and mental health treatment. To the extent that Plaintiff alleges that Defendants failed to follow prison policies, he does not state a claim under § 1983. An alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v.*

*Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

### C. Claim III: Discrimination in Prosecution

Plaintiff alleges that the prosecuting attorneys for Branch County, including Defendants Kimble, White, and Van Langevelde, acting in concert with the County and Victim's Rights Coordinator Mack, decided not to prosecute prisoner Cowan for racially discriminatory reasons. Plaintiff claims that he is black, and that Cowan would have been prosecuted if Plaintiff was white. Plaintiff also claims that Branch County has a policy or practice of selectively treating black victims of crime different from white victims. These allegations are wholly conclusory. Plaintiff alleges no facts indicating that Branch County has a racially discriminatory policy or practice, or that the decision not to prosecute prisoner Cowan was in any way influenced by race. Moreover, Plaintiff fails to state a claim because, as a private citizen, Plaintiff "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond v. Charles*, 476 U.S. 54, 64 (1986). Members of the general public (even if they claim to be witnesses or victims to a crime) lack standing to enforce the criminal laws or to compel a criminal prosecution. *See Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973). Consequently, even assuming that Defendants decided not to prosecute prisoner Cowan for improper reasons, their action or inaction does not involve any legal right of Plaintiff. Furthermore, the prosecutor is absolutely immune from damage

actions arising from his decision to initiate or not initiate a criminal prosecution.  *See Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *see also Burns v. Reed*, 500 U.S. 478 (1991).  Consequently, Plaintiff does not state a claim with respect to the failure to prosecute prisoner Cowan.

### D.  Claim IV:  Access to the Courts / Spoliation of Evidence

Plaintiff also claims that he was denied access to the courts because Defendants "engaged in a Conspiracy, Cover-up, and Spoliation of Evidence," to prevent him from pursuing the claims in this action.  (*See, e.g.*, Compl., ECF No. 1, Page ID.38.)[1]  It is well established that prisoners have a constitutional right of access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners.  *Id.* at 817.  The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them."  *Id.* at 824-25.  The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts.  *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

Plaintiff's allegations are wholly conclusory.  He does not identify any evidence that was covered up or destroyed, or any specific action by any particular Defendant that has impeded his access to the courts.  Consequently, Plaintiff fails to state a claim of denial of access to the courts, or any other federal claim related to the destruction or "spoliation" of evidence.

---

[1]This claim is repeated several times in the complaint against different groups of Defendants, with minor variations depending on the underlying claim asserted against that particular group (i.e., failure to protect, inadequate medical care, etc.).

III.    Supplemental Jurisdiction

The Court has determined that Plaintiff does not state a federal constitutional claim against Defendants Unknown Parties ## 2 to 4 and 8, Scheidler, Beckwith, Corizon Healthcare, Earl, Branch County, Ovellette, Dominguez-Bem, Kimble, White, Van Langevelde and Mack.  To the extent that Plaintiff asserts a claim against these defendants under state law, the Court declines to exercise supplemental jurisdiction over such claims.  Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims.  *Id*.  Dismissal, however, remains "purely discretionary."  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).  Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction.  Accordingly, Plaintiff's state-law claims, if any, against the foregoing Defendants will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), Plaintiff's § 1983 claims against Defendants Unknown Parties ## 2 to 4 and 8, Scheidler, Beckwith, Corizon Healthcare, Earl, Branch County, Ovellette, Dominguez-Bem, Kimble, White, Van Langevelde and Mack will be dismissed for failure to state a claim.  The Court also will dismiss any state-law claims against the dismissed Defendants for failure to state a claim.  The Court will serve the complaint against Defendants Bradley, Kline, Fisher, and Morrison.  The Court also

concludes that Plaintiff states a claim against Defendants Unknown Parties ##1, 5, 6, and 7, though

the Court lacks sufficient information at this time to order service upon these Unknown Parties.

   An Order consistent with this Opinion will be entered.


Dated:  __January 25, 2016__   __/s/ Robert J. Jonker_____
                ROBERT J. JONKER
                CHIEF UNITED STATES DISTRICT JUDGE