UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRYANT DEANDRE HARRIS,

        Plaintiff,

vs.

JAMES F. BRADLEY, *et al.*,

        Defendants.

                                    /

Case No. 1:15-cv-1041

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a former prisoner pursuant to 42 U.S.C. § 1983.[1] This matter is now before the court on defendants' motion for summary judgment (docket no. 22).

**I.**    **Background**

In screening plaintiff's 140-paragraph verified complaint, the Court previously dismissed defendants Unknown Party #2, Supervisor Scheidler, Deputy Warden Beckwith, Corizon Healthcare, Nurse Earl, Unknown Party #3, Unknown Party #4, Branch County, PA Ovellette, Dr. Dominguez-Bem, Unknown Party #8, Prosecuting Attorney Kimble, Chief Assistant Prosecutor White, Assistant Prosecutor Langevelde and Victim Rights Coordinator Mack. *See* Order (docket no. 9). The Court ordered service on defendants Assistant Resident Unit Manager (ARUM) James F. Bradley, Corrections Officer (CO) Kline (Cline), CO Fisher and Inspector Morrison. *Id.*[2] The

---

[1] Plaintiff currently lives in Lansing, Michigan. *See* Letter (docket no. 41).

[2] Plaintiff sometimes refers to CO Cline as "Kline."

Court lacked sufficient information to serve Unknown Parties ## 1, 5, 6 and 7. *Id*.[3] The allegations against the remaining identified defendants, ARUM Bradley, CO Cline, CO Fisher and Inspector Morrison are set forth below.

In his verified complaint, plaintiff stated that on June 16, 2014, plaintiff was on the LCF recreation yard playing basketball, "when a known violent prisoner [Cowans] made multiple threat [sic] to harm his life." Compl. at PageID.10.[4] Plaintiff immediately notified CO Cline and CO Fisher, because ARUM Bradley was not in the unit. *Id*. That same day, plaintiff advised unknown corrections officers, along with CO Cline and CO Fisher, that he had been threatened by a known violent offender, DeAngelo Cowans, and wanted to be placed in protective custody. *Id*. Plaintiff told them the threat was real and that he "had also sent a prison to defendant unknown James F. Bradley, and unknown defendant L.C.F. RUM in charge of F-unit." *Id*. On June 17, 2014, plaintiff met with ARUM Bradley in his F-unit office, at which time he told Bradley that Cowans had threatened him in the F-unit recreation yard and that he was in extreme fear for his life and personal safety, and of being assaulted or stabbed by Cowans. *Id*. at PageID.11. Plaintiff wanted to be placed in protective custody immediately or transferred to another facility due to Cowans' threats. *Id*. At that time, ARUM Bradley told plaintiff that although he was having problems with Cowans, plaintiff was not a problem and it was up to the classification director to move prisoners. *Id*.

Plaintiff has filed a copy of a paper which he claims was the kite sent to ARUM Bradley on June 16, 2014, which stated as follows:

---

[3] Plaintiff sometimes refers to CO Cline as "Kline."

[4] Plaintiff sometimes refers to his attacker as "Cowan."

2

> I would like to be moved to protective custody because I am in fear for my safety and my life is in danger. I have been getting threats from a prisoner by the name of Cowan and he said that he would "Get me off the yard" because of an incident on the basketball court where we exchanged words. I do not feel safe and I would like to get moved or transfered [sic]. Please respond as soon as possible.

*See* Kite (docket no. 31-1, PageID.253). In his affidavit, ARUM Bradley stated that he did not recall receiving a kite from plaintiff. Bradley Aff. (docket no. 26-1, PageID.213).

Plaintiff further alleged that:

> Plaintiff Harris made over (6) six attempts from 6/16/2014 - 6/25/2014, including writing a kite to inform defendants unknown F-Unit ARUM James F. Bradley, defendant unknown CO Fisher, defendant unknown CO Fisher [sic], unknown CO defendant 2nd shift #3, unknown CO defendant 2nd shift #4, that plaintiff Harris was in very serious fear for his life, personal safety due to physical and verbal threats made and promised by a known violent prisoner Omar DeAngelo Cowan (a true level IV prisoner), where the defendants would not place plaintiff Bryant D. Harris in protective custody pursuant to MDOC P.D. 05.01.140. . .

Compl. at PageID.11.

On June 25, 2014, after plaintiff was in his cell after visiting the commissary, Cowan violently stabbed plaintiff multiple times in the neck, ear, chest, upper back and inner arm. *Id*. at PageID.13. Plaintiff stated that when he tried to defend himself from the attacker, CO Cline, CO Fisher and ARUM Bradley "completely failed" to protect him from the assault. *Id*. at PageID.14.

Plaintiff's injuries are described in a health care services report:

> Patient was assaulted and in the process resulting with multiple chest injuries to his body. 2 inch laceration to the free edge of the L ear. [P]uncture wound to the R ant chest and L posterior chest. There is also puncture wounf [sic] to to [sic] the anterios scm area of the L side of the neck. Multiple superfitial [sic] abrasions thru out torse [sic] and arms.

Medical Visit (docket no. 1-1, PageID.66). Plaintiff required sutures for his injuries. *Id*. at PageID.67-68. Plaintiff alleged that defendant Inspector Morrison failed to investigate the matter

and did not file an MDOC request for investigation until June 26, 2014, the day after the attack. Compl. at PageID.22. In a letter dated August 21, 2014, the Branch County Prosecutor's Office advised plaintiff that criminal charges of assault with intent to do great bodily harm less than murder and assault with intent to rob while armed were filed against Cowans. *See* Letter (docket no. 1-1, PageiD.55). Some months later, plaintiff received a letter from Branch County's Chief Assistant Prosecutor stating that the criminal matter against Cowans was dismissed and that the prosecutor would not be reissuing the criminal charges. Letter (April 7, 2015) (docket no. 1-1, PageID.80).

    **II. Defendants' motion for summary judgment**

    **A. Legal standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of

> production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Finally, plaintiff has filed a verified complaint, which has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).[5]

   **B.**  **Eighth Amendment claim**

   **1.**  **Legal Standard**

The gist of plaintiff's claim is that ARUM Bradley, CO Cline, CO Fisher and Inspector Morrison failed to protect him while incarcerated. Inmates have a constitutionally protected right to health and safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). In order for

---

[5] The Court has noted a marked increase in *pro se* prisoners, like plaintiff, filing "verified complaints" in civil rights cases rather than using the form provided by the Court. While plaintiff apparently finds an advantage to proceeding in this manner, he is advised that one potential disadvantage is that a "verified complaint" containing false accusations violates 18 U.S.C. § 1623(a), which provides that "Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court . . . of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined under this title or imprisoned not more than five years, or both."

a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834 (applying deliberate indifference standard to medical claims)). As the Supreme Court explained:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being. . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs - e.g., food, clothing, shelter, medical care, and reasonable safety - it transgresses the substantive limits on state action set by the Eighth Amendment. . . .

*Helling v. McKinney*, 509 U.S. 25, 32 (1993).

An Eighth Amendment violation may occur when prison guards fail to protect one inmate from an attack by another inmate. *See Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990). However, "not all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998). To establish an Eighth Amendment claim that a prison official failed to protect an inmate, the inmate must show that the official was deliberately indifferent "to a substantial risk of serious harm" to the inmate. *Farmer*, 511 U.S. at 828; *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004). "To demonstrate deliberate indifference, an inmate must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene*, 361 F.3d at 294, *quoting Farmer*, 511 U.S. at 829, 847. Generally, an isolated or occasional attack is

insufficient to state an Eighth Amendment claim. *See Stewart v. Love*, 696 F.2d 43, 44 (6th Cir. 1982).

### 2.    ARUM Bradley

In his supporting affidavit, ARUM Bradley contests plaintiff's allegation that plaintiff warned him about the impending attack in a kite sent on June 16, 2014, stating that "[a]t no time do I recall receiving a kite from Harris" and that "[a]t no time prior to the incident was I aware that Harris was exposed to a substantial risk of serious harm." Bradley Aff. (docket no. 26-1, PageID.213). In their reply brief, defendants state that "[p]laintiff has failed to proffer any affidavits or other evidence to establish a genuine issue of material fact." Defendants' Reply (docket no. 36, PageID.280). Defendants are incorrect. As discussed, this Court must view plaintiff's verified complaint as an affidavit for purposes of responding to a motion for summary judgment. In addition, plaintiff provided a declaration which stated that he sent the kite to ARUM Bradley on the same date he argued with Cowans. *See* Harris Decl. (docket no. 33). Plaintiff made similar statements in a declaration, i.e., that he wrote the kite on June 16, 2014, that he "went to confront" the ARUS about the kite on June 17th, and that he was robbed and stabbed by Cowans on June 25th. *See* Harris Decl. (docket no. 32).

In addition to his affidavit, ARUM Bradley notes that plaintiff's grievance related to this incident, LCF 2014-07-0784-03b ("784"), makes no reference to plaintiff informing any MDOC staff before the attack except Bradley, and that plaintiff admitted that he did not notify MDOC staff until after the attack. Grievance 784 (docket no. 23-2, PageID.182). In his Step II response, plaintiff stated that:

> Its not disresputed [sic] nor refuted that Grievant did not alert staff to shut unit down after the alleged incident / even [sic] as staff was required to automatically lock it down when as here store bag robberies had been ongoing and via policy its required.  Neither was staff alert but overly relaxed which is why the unnecessary assault occurred upon grievant person.  Therefore liability is established - the same of which applies to Rum Bradley where as Grievant did in deed inform him that I was having problems in said unit and with whom I was having it with - which was the same person who did in fact implement the assault upon my physical person.

*Id*. at PageID.181.  While defendants have pointed out that plaintiff filed a potentially flawed grievance, this would relate to the exhaustion of administrative remedies, a theory which is not raised in the motion for summary judgment.

Viewing the evidence in the light most favorable to plaintiff, a genuine issue of material fact exists as to whether plaintiff alerted ARUM Bradley that his life was in danger from prisoner Cowans.  Based on these facts, a reasonable jury could find that ARUM Bradley was subjectively aware of the risk and disregarded that risk by failing to take reasonable measures to abate it.  *See Farmer*, 511 U.S. at 829, 847; *Greene*, 361 F.3d at 294.  Accordingly, ARUM Bradley's motion for summary judgment should be denied on that basis.

### 3. CO Cline and CO Fisher

As discussed in his verified complaint, plaintiff alleged that he advised CO Cline and CO Fisher of the threat on June 16, 2014, that he made over six attempts to advise CO Fisher between June 16, 2014 and June 25, 2014, and that when he tried to defend himself from the attacker, CO Cline and CO Fisher failed to protect him from the assault.  In their affidavits, both CO Cline and CO Fisher stated that "[a]t no time did Harris or any other staff inform me that Harris was in danger for any reason," that "[a]t no time prior to the incident was I aware that Harris was exposed to a substantial risk of serious harm," and that at no time on June 25, 2014 "did Harris seek

8

assistance from me or other Unit Staff due to the alleged attack." Cline Aff. (docket no. 26-2, PageID.216); Fisher Aff. (docket no. 26-3, PageID.219).

Viewing the evidence in the light most favorable to plaintiff, a genuine issue of material fact exists as to whether plaintiff alerted CO Cline and CO Fisher that his life was in danger from prisoner Cowans. Based on these facts, a reasonable jury could find that CO Cline and CO Fisher were subjectively aware of the risk and disregarded that risk by failing to take reasonable measures to abate it. *See Farmer*, 511 U.S. at 829, 847; *Greene*, 361 F.3d at 294. Accordingly, CO Cline and CO Fisher's motion for summary judgment should be denied.

### 4. Inspector Morrison

Finally, as discussed, plaintiff alleged that Inspector Morrison failed to investigate the matter and did not file an MDOC request for investigation until after the attack. *See* MDOC Form CJ-686, "Request for Protection/Investigation Report" as an exhibit to his complaint (docket no. 1-1, PageID.53). This form is dated June 26, 2014, the day after the attack, and signed by former defendant Deputy Warden Beckwith and current defendant Inspector Morrison. *Id*. In this form, Beckwith and Morrison note that plaintiff was assaulted by prisoner Cowans on June 25, 2014; that plaintiff "does not believe that he will be safe if he remains at LCF;" and that the Security Classification Committee (SCC) recommended that plaintiff be transferred to an alternate Level II facility. *Id*. Inspector Morrison stated in his supporting affidavit that he signed the CJS-686 form after the SCC meeting in his capacity as Inspector at LCF, that "[a]t no time prior to the incident of 06/25/2014, did Harris or any staff member inform me that Harris was in danger for any reason" and that "[a]t no time prior to the incident was I aware that Harris was exposed to a substantial risk of serious harm." Morrison Aff. (docket no. 26-4, PageID.222). Based on this record, there is no

9

evidence that Inspector Morrison failed to investigate the matter prior to the attack other than plaintiff's speculation that Morrison acted with "gross incompetence" and engaged in a "cover up." *See* Compl. at PageID.22. Accordingly, Inspector Morrison is entitled to summary judgment.

### C. Qualified Immunity

Finally, defendants contend that they are entitled to summary judgment on the affirmative defense of qualified immunity. Because Inspector Morrison is entitled to summary judgment on other grounds, the Court will limit its discussion to ARUM Bradley, CO Cline and CO Fisher. Under this affirmative defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Carroll v. Carman*, -- U.S. --, 135 S. Ct. 348, 350 (2014).

When a defendant raises the issue of qualified immunity on summary judgment, "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). Although the plaintiff bears the ultimate burden, "[t]he defendant bears the initial burden of coming forward with facts to suggest that he acted within the scope of his discretionary authority during the incident in question." *Id.* Once this is accomplished, "the burden shifts to the plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct." *Id.* To meet

his burden on summary judgment, a plaintiff must show (1) that a constitutional right was violated, and (2) that the right was clearly established at the time of the violation. *Chappell v. City Of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). The court may exercise its discretion to decide which prong of the test to address first in light of the circumstances of the case. *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir 2011), citing *Pearson v. Callahan*, 555 U.S. 223, 232-33 (2009).

Here, defendants did not meet their initial burden of coming forward with facts to suggest that they acted within the scope of their discretionary authority during the incidents in question. *See Gardenhire*, 205 F.3d at 311. Rather, defendants have executed affidavits in which they deny that plaintiff warned them and then speculate as to what they would have done if plaintiff had warned them. *See* Bradley Aff. at PageID.213-214; Cline Aff. at PageID.216-217; Fisher Aff. at PageID.219-220. The affirmative defense of qualified immunity "serves to shield government employees from liability when performing discretionary functions in the course of their employment," *Wallin v. Norman*, 317 F.3d 558, 561 (6th Cir. 2003); this defense does not apply to actions which an employee would have, could have or might have performed. To establish this affirmative defense, ARUM Bradley, CO Fisher and CO Cline would need to admit plaintiff's verified allegations that he warned them about the threat, and then set forth a legal justification for their actions in failing to protect him. *See Pujals ex rel. El Rey De Los Habanos, Inc. v. Garcia*, 777 F. Supp. 2d 1322, 1327 (S.D. Fla. 2011) ("An affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification or other negating matter."); *Reis Robotics USA, Inc. v. Concept Industries, Inc.*, 462 F. Supp. 2d 897, 906 (N.D. Ill. 2006) ("The concept of an affirmative defense under Rule 8(c) requires a responding party

to admit a complaint's allegations but then permits the responding party to assert that for some legal reason it is nonetheless excused from liability.") (internal quotation marks and emphasis omitted).

This is not a case where defendants filed an answer to the complaint and then made an alternative statement of their affirmative defenses. Indeed they were not required to file an answer. *See* 42 U.S.C. § 1997e(g)(1); Order (docket no. 9). Rather, defendants have presented their testimony, through affidavits, in which they categorically deny plaintiff's allegations that he warned them about the threatened attack and that despite this knowledge, they did not protect him. Having established in sworn statements that plaintiff never warned them about the impending attack, defendants cannot claim qualified immunity based on an alternative set of facts, i.e., "[i]f State Defendants had received a kite from Harris or information indicating that Harris faced a substantial risk of serious harm, they would have taken steps to ensure that Harris was reasonably safe." *See* Defendants' Brief at PageID.168. In the undersigned's opinion, ARUM Bradley, CO Fisher and CO Cline have staked out their position, under oath, that plaintiff never warned them and that their duty to protect him was never at issue. Under these facts, the affirmative defense of qualified immunity does not come into play.

Furthermore, entry of summary judgment on the basis of qualified immunity is precluded by the factual disputes discussed in § II.B., *supra*. "[S]ummary judgment is not appropriate if there is a genuine factual dispute concerning whether the defendants committed acts that allegedly violated clearly established rights." *Margeson v. White County, Tennessee*, 579 Fed. Appx. 466, 470 (6th Cir. 2014).

### III.     Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 22) be **GRANTED** as to Inspector Morrison, and **DENIED** as to ARUM Bradley, CO Cline and CO Fisher.


Dated: March 24, 2017                          /s/ Ray Kent
                                               Ray Kent
                                               United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).