UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRYANT DEANDRE HARRIS,

    Plaintiff,

vs.

JAMES F. BRADLEY, *et al.*,

    Defendants.

                                  /

Case No. 1:15-cv-1041

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a former prisoner pursuant to 42 U.S.C. § 1983.[1] This matter is now before the court on defendants' second motion for summary judgment (ECF No. 80).

**I.**    **Background**

In screening plaintiff's 140-paragraph complaint, the Court dismissed defendants Unknown Party No. 2, Supervisor Scheidler, Deputy Warden Beckwith, Corizon Healthcare, Nurse Earl, Unknown Party No. 3, Unknown Party No. 4, Branch County, PA Ovellette, Dr. Dominguez-Bem, Unknown Party No. 8, Prosecuting Attorney Kimble, Chief Assistant Prosecutor White, Assistant Prosecutor Langevelde and Victim Rights Coordinator Mack. *See* Order (ECF No. 9). The Court ordered service on defendants Assistant Resident Unit Manager (ARUM) James F. Bradley, Corrections Office (CO) Kline (Cline), CO Fisher and Inspector Morrison. *Id.*[2] Later, the Court granted summary judgment in favor of defendant Inspector Morrison on May 15, 2017. *See*

---

[1] Plaintiff filed this action *pro se*. He is now represented by counsel.

[2] Plaintiff sometimes refers to CO Cline as "Kline" and CO Fisher as "Fischer".

Order (ECF No. 47).

Under the case management order, all discovery was to be served by no later than December 15, 2017. Plaintiff's counsel entered his appearance two days before the close of discovery. After counsel's appearance in this case, the Court addressed a number of discovery issues and extended the deadline for filing pre-trial motions.

As an initial matter, plaintiff did not identify Unknown Party Nos. 1, 5, 6 and 7. Accordingly, the Court should dismiss plaintiff's claims against the "Doe" defendants. *See Hindes v. FDIC*, 137 F.3d 148, 155 (3d Cir. 1998) ("Doe defendants are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed.") (internal quotation and citation omitted).

The allegations against the remaining defendants, Bradley, Cline, and Fisher are set forth below. In his verified complaint, plaintiff stated that on June 16, 2014, plaintiff was on the LCF recreation yard plaintiff basketball, "when a known violent prisoner [Cowans] made multiple threat [sic] to harm his life." Compl. at PageID.10.[3] Plaintiff immediately notified defendants Cline and Fisher, because defendant Bradley was not in the unit. *Id*. That same day, plaintiff advised unknown corrections officers, along with Cline and Fisher, that he had been threatened by a known violent offender (DeAngelo Cowans) and wanted to be placed in protective custody. *Id*. Plaintiff told them the threat was real and that he "had also sent a prison kite to defendant unknown James F. Bradley, and unknown defendant L.C.F. RUM in charge of F-unit." *Id*.

Plaintiff filed a copy of a paper which he identified as the the kite sent to defendant Bradley on June 16, 2014, which stated as follows:

---

[3] Plaintiff sometimes refers to his attacker as "Cowan."

> I would like to be moved to protective custody because I am in fear for my safety and my life is in danger. I have been getting threats from a prisoner by the name of Cowan and he said that he would "Get me off the yard" because of an incident on the basketball court where we exchanged words. I do not feel safe and I would like to get moved or transfered [sic]. Please respond as soon as possible.

*See* Kite (ECF No. 31-1, PageID.253). In a previously filed affidavit, Bradley stated that he did not recall receiving a kite from plaintiff. Bradley Aff. (ECF No. 26-1, PageID.213).

On June 17, 2014, plaintiff alleged that he met with Bradley in his F-unit office, at which time plaintiff told Bradley:

> . . . that Plaintiff Harris was in extreme fear of his life and personal safety, of being violently assaulted, or possibly stabbed by a violent prisoner Omar Deangelo Cowan who threaten [sic] Plaintiff Harris on the AM F-Unit recreation yard. Plaintiff Harris requested that Defendant James F. Bradley immediately place me in protective custody, or to transfer plaintiff Harris to another prisoner facility as soon as possible due to the treats [sic] made by prisoner Omar Deangelo Cowan was real [sic].

PageID.11.

Plaintiff further alleged that during that meeting, defendant Bradley:

> . . . stated that although Plaintiff Harris you are having problems with prisoner Omar Deangelo Cowan, because Prisoner Harris has not be [sic] a problem Defendant James F. Bradley could not move move [sic] Plaintiff Harris. Defendant James F. Bradley as stated it is up to unknown Defenant L.C.F. Classification Director/Coordinator to move Prisoner.

PageID.11.

Plaintiff further alleged that:

Plaintiff Harris made over (6) six attempts from 6/16/2014 - 6/25/2014, including writing a kite to inform defendants unknown F-Unit ARUM James F. Bradley, defendant unknown CO Fisher, defendant unknown CO Fisher [sic], unknown CO defendant 2nd shift #3, unknown CO defendant 2nd shift #4, that plaintiff Harris was in very serious fear for his life, personal safety due to physical and verbal threats made and promised by a known violent prisoner Omar DeAngelo Cowan (a true level IV prisoner), where the defendants would not place plaintiff Bryant D. Harris in protective custody pursuant to MDOC P.D. 05.01.140. . .

*Id*.

On June 25, 2014, after plaintiff was in his cell after visiting the commissary, prisoner Cowans stabbed plaintiff multiple times in the neck, ear, chest, upper back and inner arm. *Id*. at PageID.13.  Plaintiff stated that when he tried to defend himself from the attacker, CO Cline, CO Fisher and ARUM Bradley "completely failed" to protect him from the assault. *Id*. at PageID.14.

At his deposition, plaintiff told a somewhat different story.  After plaintiff got his bags at the commissary, while he was walking back to his cell, Cowans came up from behind and stabbed plaintiff in the neck.  Harris Dep. (ECF No. 84-2, PageID.603).  Plaintiff and Cowans "got to fighting", plaintiff's bags came up missing, he got stabbed, he chased Cowans, and Cowans ran off. *Id*.  At this point in time, plaintiff did not report the incident to prison staff.  Rather, plaintiff returned to his unit:

> So I walked all around the unit to tell one of my home boys I got stabbed.  So I walked all the way around leaving a trail of blood through the whole unit.  The officers, they were not aware, so I just walked to healthcare.

Harris Dep. at PageID.603.

Plaintiff's injuries are described in a health care services report:

> Patient was assaulted and in the process resulting with multiple chest injuries to his body.  2 inch laceration to the free edge of the L ear.  [P]uncture wound to the R ant chest and L posterior chest.  There is also puncture wounf [sic] to to [sic] the anterios scm area of the L side of the neck.  Multiple superfitial [sic] abrasions thru out torse [sic] and arms.

Medical Record (ECF No. 1-1, PageID.66).

In a letter dated August 21, 2014, the Branch County Prosecutor's Office advised plaintiff that criminal charges of assault with intent to do great bodily harm less than murder and assault with intent to rob while armed were filed against Cowans.  *See* Letter (ECF No. 1-1,

PageID.55).  Some months later, the Branch County's Chief Assistant Prosecutor advised plaintiff that the criminal matter against Cowans was dismissed and that the prosecutor would not be reissuing criminal charges.  Letter (April 7, 2015) (ECF No. 1-1, PageID.80).  At his deposition, plaintiff testified that the criminal case was dismissed because he was out of prison at the time and he "wasn't able to make the court date."  Harris Dep. at PageID.604.

## II. Defendants' motion for summary judgment

### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

5

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Finally, plaintiff has filed a verified complaint, which has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

### B.    Failure to Exhaust

#### 1.    Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Discussion

Defendants Fisher and Cline seek summary judgment because plaintiff failed to properly exhaust his claims against them. The only grievance filed by plaintiff which relates to the alleged incident is LCF 14-07-0785-03b ("785") (ECF No. 81-2, PageID.525-528). In this grievance, dated June 30, 2014, plaintiff stated that "a week prior to this incident I notified Assistant residential supervisor Bradley that I did not feel safe in this unit and if it was possible I would like

to be transferred to another facility." Grievance 785 at PageID.527. The grievance did not refer to defendants Fisher or Cline. The grievance was directed at defendant Bradley, who was investigated on plaintiff's claim that he failed to act on plaintiff's previous request for a transfer. In short, plaintiff did not properly exhaust any grievance against either defendant Fisher or defendant Cline. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.

The gist of plaintiff's response is that his grievance referred to Officers in "F-2" and that Cline and Fisher were on duty on the date plaintiff was stabbed. Plaintiff's Response (ECF No. 84, PageID.581-582). First, plaintiff did not include either Cline and Fisher in his grievance. The fact that they worked on the date that plaintiff was stabbed is not a substitute for failing to include these defendants in a grievance. Next, Grievance 785 did not address plaintiff's claim in this lawsuit, *i.e.*, that he told Cline and Fisher that Cowans threatened him on multiple occasions and that they failed to protect him from Cowans. Rather, this grievance claimed that "Officers in F2" violated an MDOC Policy Directive to shut down the unit after his stabbing. For these reasons, defendants Fisher and Cline should be granted summary judgment for lack of exhaustion.

### C.     Eighth Amendment claim

The gist of plaintiff's remaining claim is that defendant Bradley failed to protect him during his incarceration. Inmates have a constitutionally protected right to health and safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). However, "not all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998). In order for a prisoner to

prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010).

A plaintiff "can satisfy the objective component by showing that absent reasonable precautions, an inmate is exposed to a substantial risk of serious harm." *Richko v. Wayne County, Michigan*, 819 F.3d 907, 915 (6th Cir. 2016) (internal quotation marks omitted). The subjective component requires the plaintiff to show that "(1) the official being sued subjectively perceived facts from which to infer a substantial risk to the prisoner, (2) the official did in fact draw the inference, and (3) the official then disregarded that risk." *Id.* (internal quotation marks omitted). As the Sixth Circuit observed in *Dominguez v. Correctional Medical Services*, 555 F.3d 543, 550 (6th Cir.2009) "Because government officials do not readily admit the subjective component of this test, it may be demonstrated in the usual ways, including inference from circumstantial evidence" (brackets and internal quotation marks omitted).

### 1. The kite

The Court denied defendant Bradley's first motion for summary judgment on the Eighth Amendment claim. In his present motion for summary judgment, defendant Bradley seeks to revisit that ruling based upon statements made by plaintiff at his deposition and additional legal arguments. A major component of plaintiff's claim is that he sent a kite to defendant Bradley before the attack and that he attached the kite to his complaint. Bradley contends that plaintiff never sent the kite. At his deposition, plaintiff testified that he sent the kite to Bradley on June 16, 2014. Harris Dep. (ECF No. 84-2, PageID.601-602). However, plaintiff did not provide direct answers to basic questions such as where he obtained the copy of the kite attached to the complaint or if he

received a response to the kite.  When asked "where did you get a copy of the kite?" plaintiff stated, "I think it was sent back to me, like when you write kites, they send them back to you."  Harris Dep. (ECF No. 84-2, PageID.601-602).  Plaintiff also testified that kites are sent back with a response.  *Id.*  When asked if he attached the response to the complaint, plaintiff stated:

> It don't look like it, it just look like the kite.  No, I don't have the one with the signature on it, but when you write kites they put them in the box, they return them to you with a response.

*Id.* at PageID.602.  When asked if he received a response to the kite, plaintiff stated, "I think -- I think was sent back to me, this is how I received it, because when I said -- I didn't make a copy but I think this original copy was sent back to me, that's how I was able to get a copy."  *Id.*  When asked the direct question "where is the response?" plaintiff stated "This was all I have at this point. I mean I -- this is the only one I have at this point."  *Id.*  Then, when asked "Do you recall what the response was at all?" plaintiff did not answer the question stating, "No, I don't -- I mean nothing was done, that's -- I mean nothing was done about it, I end up getting stabbed later so, no."  *Id.*  Then, plaintiff testified that after he sent the kite, he spoke with defendant Bradley on June 17th, at which time Bradley told plaintiff that he could not move him.  *Id.*

After his deposition, plaintiff executed an affidavit which included facts not addressed at the deposition.  Specifically, plaintiff stated that at the June 17th meeting with defendant Bradley, he informed Bradley "that affiant had been in a confrontation with Mr. Cowans and that because of Cowans' gang affiliation affiant needed to be moved to another facility."  Harris Aff. (ECF No. 84-1, PageID.596).  According to plaintiff, "Mr. Bradley's response was that he did not have authority to move affiant because affiant was not a problem and there was no cause to move affiant based on the verbal report."  *Id.* at PageID.596-597.

In his affidavit, Bradley denied that he received the kite and stated that "[a]t no time prior to the incident was I aware that Harris was exposed to a substantial risk of serious harm." Bradley Aff. (ECF No. 81-3, PageID.530-531).

In the present motion for summary judgment, defendant Bradley states that based on plaintiff's deposition testimony, there is no evidence that plaintiff sent the kite which he allegedly discussed during the June 17th meeting with Bradley. During his deposition, plaintiff could not answer basic questions of how he came to possess a signed copy of a kite and whether he received a response to the kite. This leads to an inference that the kite was never sent. While plaintiff's counsel suggests that plaintiff could not remember specific information about the kite and response due to the passage of time, the Court does not find this a compelling argument. Plaintiff's case against defendant Bradley is based upon this kite. If no kite was sent on June 16th, then there is no evidence to support plaintiff's claim that he "confronted" Bradley on June 17th to discuss the kite.

Based on plaintiff's inability to answer basic questions about the origins of the kite attached the complaint, defendant Bradley seeks summary judgment because "Plaintiff has no proof that he ever submitted a kite as he alleged in his Complaint." Defendants' Brief (ECF No. 81, PageID.508). Ultimately, it appears that defendant Bradley is asking the Court to find that plaintiff's testimony that he sent the kite is not credible. However, the Court cannot make this credibility determination at the summary judgment stage. "In determining whether to grant summary judgment, a court may not make determinations of witness credibility." *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006). Accordingly, defendant Bradley's motion for summary judgment should be denied to the extent Bradley contends that plaintiff did not send the kite attached to his complaint or met with Bradley the next day to discuss the contents of the kite.

### 2.     The Eighth Amendment claim

Next, defendant Bradley revisits the merits of plaintiff's Eighth Amendment claim in light of the deposition testimony.  Viewing all of the evidence in the light most favorable to plaintiff, the undersigned concludes that plaintiff's Eighth Amendment claim fails.  Defendants contend that plaintiff failed to establish that they were deliberately indifferent to a substantial risk to plaintiff.  Plaintiff testified that before the stabbing, he and Cowans had "a relatively cordial relationship." Harris Dep. at PageID.600.  Plaintiff knew Cowans from gambling. *Id*.  According to plaintiff, in June 2014, they "exchanged words" while playing basketball, when Cowans told plaintiff "you got to go, which means I have to get off the yard." *Id*.  Plaintiff testified that they exchanged words because "[t]hey [sic] team was losing, my team was winning so, you know, we were talking, that's [sic]. . ." *Id*.  While plaintiff's entire claim is based upon Cowans' alleged threat, plaintiff could not recall what words were exchanged, stating "I mean we just had a heated argument, he told me, you know, you can't be here no more, so, you know." *Id.* at PageID.600-601.  Plaintiff stated that "[t]he reason why I didn't go to the police [sic] is because they would have put my freedom in more jeopardy if I would have just went to the police [sic] right then and there in front of him, you know." *Id.* at PageID.601.  Plaintiff stated that he was "just chilling for a minute and then I told the officers what happened and they was like really there ain't nothing we can do, wait till the ARUS [defendant Bradley] get here.  So I waited the next day and talked to him." *Id*.  Plaintiff stated that he told defendants Fisher and Cline about exchanging words with Cowans. *Id*.  At that time, plaintiff did not mention that Cowans was going to stab him.  Rather, when asked what he told Officer Cline, plaintiff stated "About the situation, about the dude told me to get off the yard." *Id.*

12

Plaintiff also testified that both he and Cowans were housed as level two prisoners. *Id.* at PageID.603. Plaintiff felt that Cowans should have been incarcerated at a higher security level (level four) because Cowans was a known "violent prisoner." *Id.* While plaintiff held these beliefs, he did not know if Cowans had physical altercations with any other prisoner in the unit. *Id.*

Viewing the evidence in the light most favorable to plaintiff, the Court concludes that plaintiff has failed to establish that he faced a sufficiently serious risk to his health or safety and that defendant Bradley acted with deliberate indifference to that risk. Plaintiff admitted that he had a cordial relationship with Cowans. They gambled and played basketball together. Cowans never made a direct threat to plaintiff. Rather, plaintiff testified that Cowans told him to get off the yard. Cowans had the same security classification as plaintiff (level two) and plaintiff could not identify any history of physical altercations with other prisoners in the unit. As discussed, plaintiff did not advise Bradley of a specific threat received from Cowans. At most, plaintiff expressed a general fear that Cowans would do something to him at some point in the future.

Plaintiff's claim is similar to the prisoner's claim in *Stewart v. Love*, 696 F.2d 43, 45 (6th Cir. 1982), in which the Sixth Circuit stated that "[t]he gist of the present complaint is the failure of the prison officials to protect the plaintiff from this attack, in spite of the fact that the plaintiff asserts that he had repeatedly informed the prison officials that certain inmates were out to get him and had requested special protection." In *Stewart*, plaintiff was returned to a unit where those he feared were housed, and about three weeks later he was attacked by another inmate with a pool stick taken from the unit's recreation room. *Stewart*, 696 F.2d at 44-45. After observing that "[i]n the context of prison cases involving assault by other inmates, mere negligence on the part of prison officials is not sufficient to give rise to culpability under the eighth amendment," *id.* at 44,

13

the Sixth Circuit concluded that:

> [W]hile the plaintiff asserts that letters were circulated threatening to harm or kill him, he has never seen any such letters and is apparently unable to produce them. Thus, the prison officials were faced with unsupported allegations and were required to reach a professional judgment on the basis of the facts as they then appeared. In retrospect, that judgment appears to have been flawed, but the court concludes that any wrongdoing was mere negligence, and was not a violation of the plaintiff's rights under either the 8th or 14th Amendments.

*Stewart*, 696 F.2d at 45.  Based on these facts, the court made its often cited statement,

> In some circumstances, the failure to protect inmates from attack by fellow inmates may state a claim under either the 8th Amendment, *see Little v. Walker*, 552 F.2d 193 (7th Cir. 1977); *Holt v. Sarver*, 442 F.2d 304 (8th Cir.1971), or the 14th Amendment, *Curtis v. Everette*, 489 F.2d 516 (3rd Cir.1973). However, generally an isolated or occasional attack is not sufficient to state a claim. *Woodhous v. Commonwealth of Virginia*, 487 F.2d 889 (4th Cir. 1973). In the present case, the incident of which the plaintiff complains is clearly a single, isolated incident.  The court does not believe that a constitutional violation has occurred, even taking the facts as stated most favorably to the plaintiff.

*Id.* at 45.

Here, given Cowans' security level, the context of the alleged threat (*i.e.*, words exchanged during a basketball game), and the lack of a specific threat directed at plaintiff, Bradley had no basis to infer that plaintiff faced a serious risk of substantial harm to his health or safety from Cowans, or to infer that the words exchanged on the basketball court would result in the extreme conduct of Cowans attacking plaintiff in the commissary one week later.  Under the facts of this case, while Bradley's judgment may have been flawed and he may have been negligent with respect to investigating plaintiff's general fear that Cowans would do something to him after telling plaintiff to "get off of the yard" during a basketball game, Bradley's failure to act on this vague threat did not give rise to a federal constitutional violation.  Accordingly, defendant Bradley should be granted summary judgment on this claim.

### D. Qualified Immunity

Finally, defendants again contend that they are entitled to summary judgment on the affirmative defense of qualified immunity. As in the first motion for summary judgment, this argument fails. Under this affirmative defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Carroll v. Carman*, -- U.S. --, 135 S. Ct. 348, 350 (2014).

When a defendant raises the issue of qualified immunity on summary judgment, "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). Although the plaintiff bears the ultimate burden, "[t]he defendant bears the initial burden of coming forward with facts to suggest that he acted within the scope of his discretionary authority during the incident in question." *Id.* Once this is accomplished, "the burden shifts to the plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct." *Id.* To meet his burden on summary judgment, a plaintiff must show (1) that a constitutional right was violated, and (2) that the right was clearly established at the time of the violation. *Chappell v. City Of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). The court may exercise its discretion to decide which prong of the test to address first in light of the circumstances of the case. *Bishop v. Hackel*,

636 F.3d 757, 765 (6th Cir 2011), citing *Pearson v. Callahan*, 555 U.S. 223, 232-33 (2009).

In their previous motion, defendants did not meet their initial burden of coming forward with facts to suggest that they acted within the scope of their discretionary authority during the incidents in question. *See Gardenhire*, 205 F.3d at 311. As this Court stated in the previous Report entered on March 27, 2017:

> Rather, defendants have executed affidavits in which they deny that plaintiff warned them and then speculate as to what they would have done if plaintiff had warned them. *See* Bradley Aff. at PageID.213-214; Cline Aff. at PageID.216-217; Fisher Aff. at PageID.219-220. The affirmative defense of qualified immunity, "serves to shield government employees from liability when performing discretionary functions in the course of their employment," *Wallin v. Norman*, 317 F.3d 558, 561 (6th Cir. 2003); this defense does not apply to actions which an employee would have, could have or might have performed. To establish this affirmative defense, ARUM Bradley, CO Fisher and CO Cline would need to admit plaintiff's verified allegations that he warned them about the threat, and then set forth a legal justification for their actions in failing to protect him. *See Pujals ex rel. El Rey De Los Habanos, Inc. v. Garcia*, 777 F. Supp. 2d 1322, 1327 (S.D. Fla. 2011) ("An affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification or other negating matter."); *Reis Robotics USA, Inc. v. Concept Industries, Inc.*, 462 F. Supp. 2d 897, 906 (N.D. Ill. 2006) ("The concept of an affirmative defense under Rule 8(c) requires a responding party to admit a complaint's allegations but then permits the responding party to assert that for some legal reason it is nonetheless excused from liability.") (internal quotation marks and emphasis omitted).
>
> This is not a case where defendants filed an answer to the complaint and then made an alternative statement of their affirmative defenses. Indeed they were not required to file an answer. *See* 42 U.S.C. § 1997e(g)(1); Order (docket no. 9). Rather, defendants have presented their testimony, through affidavits, in which they categorically deny plaintiff's allegations that he warned them about the threatened attack and that despite this knowledge [sic], they did not protect him. Having established in sworn statements that plaintiff never warned them about the impending attack, defendants cannot claim qualified immunity based on an alternative set of facts, i.e., "[i]f State Defendants had received a kite from Harris or information indicating that Harris faced a substantial risk of serious harm, they would have taken steps to ensure that Harris was reasonably safe." *See* Defendants' Brief at PageID.168. In the undersigned's opinion, ARUM Bradley, CO Fisher and CO Cline have staked out their position, under oath, that plaintiff never warned them and that their duty to protect him was never at issue. Under these facts, the affirmative

defense of qualified immunity does not come into play.

R&R (ECF No. 44, PageID.310-311).  The Court cannot disregard defendants' previously filed affidavits for purposes of their present motion for summary judgment on the basis of qualified immunity.  Accordingly, their motion for summary judgment on this ground should be denied.

### III.     Recommendation

For the reasons set forth above, I respectfully recommend that plaintiff's claims against Unknown Party Nos. 1, 5, 6 and 7 be **DISMISSED**.

I further recommend that defendants' motion for summary judgment (ECF No. 80) be **GRANTED** as to all defendants.

I further recommend that this action be **TERMINATED**.


Dated:  September 25, 2019            /s/ Ray Kent
                                      RAY KENT
                                      United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).